UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JACKIE WILSON, et al.,
    Plaintiff,

vs.                                                                                                  05-1378

MARY BETA O'CONNELL, et al.
    Defendants.

ORDER

    This cause is before the court for consideration of the defendants' motion for summary judgement [d/e 46] and plaintiff's motion to continue. [d/e 55]

I. BACKGROUND

    The pro se plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at Pontiac Correctional Center. The plaintiff named eight defendants including Medical Technician Mary Beth O'Connell, Warden Stephen Mote, and Correctional Officers Richard Allen, T. Kennedy, M. Miller, Danny McFarlen, Ronald Helander and J. Allen.

    The plaintiff has two surviving claims. *See* January 24, 2006 Merit Review Order. First, the plaintiff claims Defendants O'Connell, Mote, R. Allen, Kennedy, Miller, McFarlen, Helander and J. Allen were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, the plaintiff says he is nudist and has continued this practice when he is in his cell at the Illinois Department of Corrections. The plaintiff says Medical Technician O'Connell refused to provide medical care for "pain and swelling of his penis" because he did not have clothes on from July 13, 2004 to July 24, 2004. (Comp., p. 6). The plaintiff's complaint alleges that he was still refused care after he put clothes on. The plaintiff says he was finally treated by a urologist on July 25, 2004.

    Second, the plaintiff alleges that Defendants Kennedy, Allen, Miller, McFarlen, Helander and J. Allen violated the plaintiff's Eight Amendment Rights when they refused to take action after the plaintiff told them about his cell conditions. The plaintiff says he had no electricity, no ventilation and no running water.

    The defendants first filed their dispositive motion on June 8, 2007. The plaintiff then filed a motion to continue on July 17, 2007 stating the defendants had refused to respond to his discovery requests and he needed this information to file a response to the motion for summary judgement. On July 19, 2007, the court ordered the defendants to file a response to the plaintiff's motion and state what discovery had and had not been provided to the plaintiff. *See*

July 19, 2007 Text Order.

The defendants responded that they had not provided responses to discovery requests received just before the close of discovery. The court granted the plaintiff's motion to continue and ordered the defendants to file a response to the discovery requests on or before December 21, 2007. *See* November 20, 2007 Text Order. The plaintiff was given until January 25, 2008 to file a response to the pending dispositive motion.

The defendants filed a notice of compliance on December 21, 2007. The plaintiff filed no further documents within the required time frame. Instead, the plaintiff filed a motion to continue on February 8, 2008. The plaintiff admits that he received the defendants' discovery requests. However, the plaintiff says he went on a hunger strike on December 27, 2007. The plaintiff says he was transferred to another cell and eventually to the Health Care Unit. The plaintiff says he was refused all his legal documents and told "the only way they would give plaintiff his legal property was that plaintiff was to end the hunger strike." (Plain. Mot., p.3) The plaintiff chose to end his hunger strike on January 25, 2008 and now asks for additional time to file his response.

The motion is denied. [d/e 55]. While the court appreciates that the plaintiff is proceeding pro se, the plaintiff has repeatedly refused to follow court orders and deadlines. For example, discovery deadlines were first set on July 26, 2006. On March 26, 2007 the court granted the plaintiff's motion to extend the discovery deadlines even though the plaintiff had given "no explanation for why he has failed to conduct any discovery." March 26, 2007 Text Order. The plaintiff was "admonished that he is responsible for fully prosecuting his own lawsuit" and that no further continuances would be granted. *Id.* The discovery deadline was extended to May 4, 2007.

Nonetheless, the court still granted the plaintiff's motion for additional time to file a response to the dispositive motion. Even after the court's warnings, the plaintiff had waited until the eleventh hour to participate in the discovery process. The defendants stated that the plaintiff did not send discovery requests until April 24, 2007, just one week before the end of the second discovery period. The plaintiff again provided no reason for his failure to actively participate in the discovery period. [d/e 50]

The defendants provided discovery responses to the plaintiff. The plaintiff then chose to go on a hunger strike. The court has previously admonished the plaintiff that he is responsible for litigating his own claims which includes meeting court deadlines. The plaintiff's failure to meet the deadline for filing a response to the summary judgement motion was the result of his own decision. The plaintiff also fails to explain why he did not file a motion to continue prior to the deadline and why he has still failed to file any response to the summary judgement more than a month after that deadline.

## II. FACTS

The following facts are taken from the defendant's motion including the plaintiff's deposition. The plaintiff was housed in segregation, 2 Gallery, Cell No. 217, during the time period relevant to the allegations in his complaint. Medical Technicians visited the cell houses on a daily basis to take sick call requests. The plaintiff says most of the time they came to his gallery in the mornings. The medical technicians were escorted by security staff on their rounds through the cell house.

Defendant O'Connell says she has worked as a Corrections Medical Technician (herein CMT) at Pontiac Correctional Center since February of 1988. She says part of her duties include daily screening of offenders for health-related issues. If an inmate's complaint cannot be addressed by the CMT, the offender is referred to sick call to be seen by a nurse or doctor.

In addition, Defendant O'Connell says emergency treatment and care for chronic conditions are also available. If the inmate needs emergency care, the cell house staff notify Health Care personnel and they either come to the cell house or ask for the inmate to be transferred to the Health Care Unit. Inmates suffering from some chronic conditions are monitored by physicians on a regular basis.

Defendant O'Connell says she has no recollection of the plaintiff or the incidents in his complaint. "I am not aware that the Department of Corrections recognizes offender Wilson or any other offender as a 'nudist'." (Def. Memo, O'Connell Aff., p.2). The defendant says according to her employee timecard, she worked her regular shirt of 7:00 a.m. to 3:00 p.m. from July 13 to July 17, 2004 and from July 20 to July 24, 2004. The defendant says July 18 and 19 of 2004 were her scheduled days off, but she worked both the 7:00- 3:00 p.m and the 3:00 to 11:00 p.m. shift.

Defendant O'Connell says in her experience at Pontiac Correctional Center:

it is expected that every offender requesting medical assessment is appropriately dressed when the CMT make rounds, which is done at approximately the same time each day. My personal practice is to give an inappropriately dressed offender the opportunity to put on appropriate clothing before I refuse to assess him. I consider appropriate dress to mean the offender is wearing, at minimum, a pair of boxer shorts or other clothing covering his genital area. In the absence of evidence of an emergent medical condition, I am not required to assess an offender who refuses to dress appropriately when given he opportunity to do so. (Def. Memo, O'Connell Aff, p. 2)

Defendant O'Connell adds that she has never refused to assess the medical needs of an appropriately dressed offender.

In his deposition, the plaintiff says on July 13, 2004, he requested medical attention from O'Connell, but was told he needed to put clothes on. (Def. Memo, Plain. Depo p 6). The plaintiff admits that on July 13 to the 25 of 2004, each time a medical technician came to his cell, he was naked. *Id.* at p. 46-52. The plaintiff says he covered himself with a towel on one occasion, but there is no information before this court that the plaintiff did put on any clothing.

The plaintiff says each time Defendant O'Connell came to his cell, she was with one of the Defendant Correctional Officers. The plaintiff also says when he complained to the Warden about the lack of medical care, he took no action.

Defendant O'Connell says there are no medical records documenting any contacts between the plaintiff and Health Care Staff from July 13 to July 24, 2004. The plaintiff was seen on July 25, 2004, in Pontiac's Urgent Care Unit at about 10:40 p.m. Since no sick call appointments are scheduled during the 3:00 to 11:00 p.m. shift, the plaintiff was brought to the Health Care Unit as an emergency patient. The plaintiff complained of swelling and said he had suffered with this condition for 12 days.

The plaintiff was seen by a urologist at an outside hospital on July 26, 2004. He condition was treated with medication and it was resolved without further complaint before the plaintiff was transferred to another institution on August 2, 2004. The defendant identifies the plaintiff's condition as "penile edema," but provides no other information. The plaintiff in his deposition admits he has not suffered from any of the same symptoms since he was treated in July of 2006. (Def. Mot, Plain. Depo, p. 60)

Defendant O'Connell says correctional officers do not provide medical treatment to inmates beyond notifying medical personnel if an inmate needs or requests care. O'Connell also say she is not trained or licensed to diagnose medical conditions or prescribe medication or treatment.

The defendants have also provided an affidavit from Correctional Major Malcolm Davidson. Davidson says he supervises the East Cell House and has done so since February of 2006. He reports that each cell has an electrical outlet. The cells are not air conditioned. The cell house does have an air circulation system using large fans to circulate air though the cell house. Each cell has a vent in the back wall and the cell front is open with either bars or perforations to allow additional air flow. The cell house also has windows which can be opened.

Davidson says each cell has running water and a toilet. However, the water can be turned off to an individual cell if the inmate presents a threat. In this case, the inmate is allowed to flush his toilet and obtain water every two hours until the water is turned back on. "If a major plumbing problem develops in an occupied cell which cannot be repaired in a matter of hours, the offender would be relocated to another cell." (Def. Memo, Davidson Aff, p 2).

Davidson does not say he worked in the East Cell House during the relevant time periods of the plaintiff's complaint, nor that he is familiar with cell conditions during this time period nor any information specific to the plaintiff's cell in 2004.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### IV. ANALYSIS

A. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The defendants argue that they are entitled to summary judgement on the plaintiff's claim that they were deliberately indifferent to a serious medical condition.  The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id*.  The plaintiff must also show that the defendants acted

with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill. 2001). A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999)  However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Defendant O'Connell argues that all inmates must be appropriately dressed before a CMT will meet with them. The plaintiff admits he was repeatedly told what he needed to do to receive medical treatment, but refused. The defendant cites *Rodriguez v. Briley,* 403 F.3d 952 (7th Cir. 2005) for the argument that "[w]hen an inmate is given an option that is easily complied with, and chooses to do otherwise, his Eighth Amendment claim of deliberate indifference must be denied." (Def. Memo, p. 11). The defendant's reliance on *Briley* is not completely persuasive. In the case before the court, the plaintiff's complaint *alleges* that he suffered from a painful and on-going medical condition, that he told the defendant about the condition and she refused to treat him even after he complied with her requirements.

As the court has previously stated, summary judgement is the "put up or shut up'" moment in a lawsuit, when the plaintiff must show what evidence he has that would convince a trier of fact to accept his version of events. *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 504 (7th Cir.1999); *see also Johnson,* 325 F.3d at 901. There is no evidence before the court to support the plaintiff's claims.

In his deposition, the plaintiff does not testify that he ever complied with the request that he put clothing on. In addition, there is no evidence the plaintiff suffered from a painful condition. The plaintiff's main complaint seems to be with the clothing request:

> So, you're telling me to put on some clothes to cover up the injury that you've got to look at anyway? That's preposterous even to me....(Plain. Depo, p. 12)

Most compelling to the court are the documents previously submitted by the plaintiff in support of his own motion for summary judgement. The plaintiff submitted the progress notes from Dr. Kent Frye who examined the plaintiff at an outside hospital on July 26, 2004.

> Patient was seen today for evaluation of penile edema. This has been going on now for a couple of weeks. This was painless. He denies any trauma...he has no hematuria or difficulty passing urine..... I feel this is most likely an allergic reaction to something. I will place him on steroids for a couple of days. (Plain Mot,Group Ex. B).

There is no evidence in the record that could support a finding that the plaintiff suffered from a serious medical condition. Even if he could produce that evidence, there is no evidence to support a finding that any of the defendants knew he suffered from a serious medical condition prior to July 25, 2004. Most importantly, the evidence before the court demonstrates that the plaintiff did not suffer any detrimental effects due to the delay in treatment. *see Langston v Peters*, 100 F.3d at 1240. Therefore, the motion for summary judgement is granted on this claim for all defendants.

B.  CELL CONDITIONS

The defendants argue that summary judgement should be granted on the plaintiff's claims involving his cell because he failed to exhaust his administrative remedies and he has failed to demonstrate that the conditions of his cell violated the constitution. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a). *See also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, (7th Cir. 1999).

The defendants argue that the grievances the plaintiff exhausted dated July 13 and July 14, 2004 do not address his cell conditions claim. The plaintiff's July 13, 2004 grievance is marked "medical treatment." (Plain Mot. S.J, Group Ex. B). The gist of the plaintiff's complaint is that Defendant O'Connell did not agree to address his medical concerns. In fact, in the "relief requested" portion, the plaintiff only makes reference to wanting medical staff to see him regardless of whether he has clothes on. The same is true of all other grievances submitted by the plaintiff. (See Plain. Mot. S.J., Group Ex. B, July Grievances).

There is no evidence before the court that the plaintiff did exhaust his administrative remedies for this claim. The only evidence presented suggests that he did not. The motion for summary judgement is granted.

**ITS IS THEREFORE ORDERED that:**

> **1) The plaintiff's motion for additional time to file a response to the dispositive motion is denied. [d/e 55]**

**2) The defendant's motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 46]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**3)  If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.**  *See* **Fed. R. App. P. 24(a)(1)c.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**4) The agency having custody of the plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $250.00.**

**5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 4th day of March, 2008

                                      s\Harold A. Baker
                 _____
                                 HAROLD A. BAKER
                           UNITED STATES DISTRICT JUDGE